# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

JOHN C. KELLY,

Plaintiff,

DECISION & ORDER

-vs-

11-CV-06614-CJS

DR. TAN, ET AL.,

Defendants.

## APPEARANCES

For Plaintiff:                              John C. Kelly, *Pro se*
                                            Freedom House 6
                                            6 St. Nicholas Terrace
                                            Manhattan, NY 10027


For Defendants:                             Hillel Deutsch, A.A.G.
                                            New York State Attorney General's Office
                                            Department of Law
                                            144 Exchange Boulevard
                                            Rochester, NY 14614


## INTRODUCTION

Plaintiff, John C. Kelly, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Eighth Amendment rights by failing to provide him with adequate medical treatment. Now before the Court is Defendants' motion for summary judgment (Docket No. [# 6]).

The application is denied, although at Plaintiff's request Carl Koenigsmann, M.D. is dismissed from the action and is replaced by Ken Jin, M.D.

## BACKGROUND

Unless otherwise noted the following are the facts of the case viewed in the light most-favorable to Plaintiff, the non-moving party. This action arose when Plaintiff was previously confined at Collins Correctional Facility ("Collins").  At all relevant times, Joseph Tan, M.D. ("Tan") was a medical doctor employed as Health Services Director at Collins. Carl Koenigsmann, M.D. ("Koenigsmann") was a medical doctor employed by DOCCS as Regional Medical Director. Robert Ciepiela, DPM ("Ciepiela") was a licensed podiatrist at the Foot Care Center of Buffalo. Eileen DiNisio ("DiNisio") was employed by DOCCS as Regional Health Services Administrator. Karen Bellamy ("Bellamy") was employed by DOCCS as Director of the Inmate Grievance Program. Nurse Administrator Samuelson ("Samuelson") was employed by DOCCS as Nurse Administrator at Collins.

Prior to the events at issue in this case, Plaintiff was an inmate at Livingston Correctional Facility ("Livingston"). At Livingston, medical staff scheduled Plaintiff to see a podiatrist because he was experiencing foot pain and believed there was a piece of glass in his foot. Prior to that appointment, though, Plaintiff was transferred to Collins. After arriving at Collins, in August 2010, Plaintiff had a medical appointment with Tan. Plaintiff told Tan about the podiatric appointment the medical staff at Livingston had scheduled for him. Tan reviewed Plaintiff's medical records, told Plaintiff that there was no glass in his foot, and canceled Plaintiff's trip to the podiatrist.

On August 4, 2010, in response to Tan canceling his podiatric appointment, Plaintiff filed an inmate grievance entitled "Schedule Appt. Outside M.D." in which he complained of having a piece of glass in his foot as well as calluses, both of which caused pain.[1] In his grievance, Plaintiff requested an appointment with an outside physician. On August 17, 2010, the Inmate Grievance Resolution Committee ("IGRC") responded by stating: "IGRC recommends that this grievance by sent before the Superintendent [for] review." (Docket No. [#6-4] at p. 5).   On August 27, 2010, the Superintendent denied Plaintiff's grievance, apparently adopting Tan's conclusion "that there was no clinical indication for surgical intervention."[2] Plaintiff signed the "Appeal Statement" at the bottom of the Superintendent's response, and where the form instructs the grievant to explain why he or she is appealing the decision to the Central Office Review Committee ("CORC") Plaintiff wrote, "my records show from x ray I have a foreign body in my foot. The doctor can't assess my foot just by looking at it. I just take this to Regional health Services in Albany." [sic].[3]   The appeal was never signed by the grievance clerk and a "Receipt of Appeal" memorandum was never received from CORC.

Subsequently, Plaintiff wrote to Regional Health Services with his concerns. Upon the request of Koenigsmann, Administrator DiNisio replied to Plaintiff's letter on November 2, 2010 stating that she was advised by Nurse Administrator Samuelson that Plaintiff's x-rays did not reveal a definitive foreign body. Plaintiff wrote Regional Health Services a second time, and on November 19, 2010, DiNisio responded to Plaintiff

---

[1] [#9] DOCS Inmate Grievance Complaint, Grievance No. Col II-16791-10.
[2] [#9] DOCS Inmate Grievance Program, Superintendent's Response, dated August 27, 2010.
[3] *Id.*

stating that "it was determined that there could possibly be a foreign body present but it was not recommended to attempt to remove it because it would most probably cause more damage."[4]

Plaintiff continued to go to sick call where he was seen by Ken Jin, M.D. ("Jin"). Plaintiff told Jin that there was glass in his foot and that he was in pain, but Jin told Plaintiff that the state would not arrange to have the glass removed. After a year, though, Jin recommended that Plaintiff see a podiatrist. The referral Jin wrote to the podiatrist explicitly stated that there was glass in Plaintiff's foot, and recommended the glass be surgically removed using fluoroscopic procedure. In the interim, Plaintiff wrote to Regional Health Services regarding his foot pain for the third time and received a response from DiNisio on July 28, 2011 which stated an appointment was scheduled for him to see a podiatrist to evaluate and treat his foot.

On August 7, 2011, Plaintiff saw podiatrist Ciepiela at Wende Regional Medical Unit. At the appointment Ciepiela debrided Plaintiff's calluses and recommended that he be measured for medical boots, but did not remove the glass. In his report, Ciepiela acknowledged the presence of a foreign body ("FB") in Plaintiff's foot stating, "FB as per history + x-ray," but reported that the foreign body was "asymptomatic."[5]

On August 15, 2011, Plaintiff filed a second grievance entitled "Remove Glass from Foot."[6] The grievance stated that Ciepiela had not removed the glass, and that his pain was getting worse. On August 24, 2011, Plaintiff agreed to refer his grievance to the Superintendent upon the recommendation of the IGRC. The Superintendent denied

---

[4] [#9], DOCS Regional Health Services, DiNisio Response, dated November 10, 2010.
[5] [#9], DOCS Health Services System, Request and Report of Consultation, dated August 9, 2011.
[6] [#9] DOCS Inmate Grievance Complaint, Grievance No. Col II-17536-11.

Plaintiff's grievance on August 30, 2011. Plaintiff appealed to CORC, stating "I would like to grieve the Superintendent's decision because I'm in pain. They know it."[7] Bellamy subsequently sent Plaintiff a written notice, informing him that his grievance had been received by CORC.[8] On November 9, 2011, CORC issued a notice, signed by Bellamy, stating that Plaintiffs grievance was denied.[9] Plaintiff filed a Complaint [# 1] on December 12, 2011 alleging an Eighth Amendment medical deliberate indifference claim against Defendants.

On April 12, 2012, Defendants filed the subject motion for summary judgment [# 6] in lieu of answering the Complaint. Defendants maintain that; (1) any allegations against them in their official capacities should be dismissed; (2) Plaintiff failed to allege the personal involvement of Ciepiela, DiNisio, Samuelson, and Bellamy; (3) Plaintiff failed to exhaust all administrative remedies; and (4) Plaintiff failed to state a claim for deliberate medical indifference. On May 2, 2012, Plaintiff filed a Response in Opposition to Defendant's Motion for Summary Judgment, to which he attached all documentation pertaining to the grievances filed in this case, as well as the medical report of his treatment by Ciepiela.  On May 4, 2012, in further support of their motion, Tan and Koenigsmann submitted reply affidavits [# 10] in which they assert that at no point did either of them examine or treat Plaintiff. Additionally, Ciepiela submitted an affidavit in which he asserts he "found no evidence Plaintiff had glass in his foot". *Id.*

On May 11, 2012, Plaintiff filed a Sur-Reply in Opposition to Defendant's Motion for Summary Judgment [# 11] in which he stated that he mistakenly named

---

[7] [#9] DOCS Inmate Grievance Program, Superintendent's Response, dated August 30, 2011.
[8] [#9], DOCS Inmate Grievance Program, Receipt of Appeal, dated September 12, 2011.
[9] [#9], DOCS Inmate Grievance Program, CORC Decision, dated November 9, 2011.

Koenigsmann in the Complaint, and that the doctor who he mistakenly identified as Koenigsmann was Jin. Plaintiff therefore requests that Jin be substituted in place of Koenigsmann.

## ANALYSIS

The Court liberally construes Plaintiff's last submission as a cross motion to amend, to substitute Jin for Koenigsmann. As the Second Circuit has held,

> Generally, permission to amend should be freely granted. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The court plainly has discretion, however, to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant.

*Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir.1990). Although Defendants have moved for summary judgment, this case is in its earliest stage, and no discovery has been conducted. Accordingly, there has been no inordinate delay. Plaintiff admits he mistakenly named Koenigsmann, and wishes to substitute Jin as a defendant in this case. Even though the application is contained in a sur-reply, it does not appear as though it will prejudice the Defendants. Jin is therefore substituted in place of Koenigsmann, and the Court will direct that he be served.  Koenigsmann is dismissed from the action.

### Summary Judgment Standard

Summary  judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must

make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party ." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993). Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Defendant provided Plaintiff with the "*Irby*" Notice to *Pro Se* Litigants as required by Local Rule of Civil Procedure 56.2. (Docket No. [# 6-3] ).

Although Plaintiff has not raised the issue, the Court is mindful that no discovery has yet taken place in this action, since "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Young v. Benjamin Development Inc.*, 395 Fed.Appx. 721, 722–723, 2010 WL 3860498 at * 1 (2d Cir. Oct.5, 2010) (citation omitted). Although the Court could deny the motion on this basis alone, it finds that the application should be denied on the merits in any event.

**§ 1983**

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles generally applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. *See, e.g.*, *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir.2004).

**Official Capacity Claims**

Under the Eleventh Amendment, State officials can be sued in their official capacities for injunctive relief, but not for money damages. *See Fulton v. Goord*, 591 F.3d 37, 45 (2d Cir.2009) (noting that "*Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), holds that in a suit against state officials in their official capacities, monetary relief (unlike prospective injunctive relief) is generally barred by the Eleventh Amendment," though such immunity may be waived or abrogated in a particular case).

In his Complaint, Plaintiff listed the defendants along with their titles, but did not indicate the capacity in which he was suing them. Because the Court has an obligation to give a liberal reading to *pro se* pleadings, the Court will consider plaintiff's claims to have been made against defendants in both their official and personal capacities. In moving for summary judgment as to the official capacity claims Defendants do not discuss the nature of the relief Plaintiff is seeking, but they appear to assume he is seeking only money damages. However, liberally construing the Complaint, it appears Plaintiff is seeking money damages as well as prospective injunctive relief. Specifically, in addition to money damages, it appears that Plaintiff is seeking an injunction requiring Defendants to surgically remove the glass from his foot. To the extent Plaintiff is seeking money damages the official capacity claims are dismissed. However, to the extent he is seeking prospective injunctive relief, the official capacity claims may proceed.

**Personal Involvement**

> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir.2004).

Defendants argue that Plaintiff failed to allege the personal involvement of Ciepiela, DiNisio, Samuelson, and Bellamy. Defendants maintain that because Defendants Ciepiela, DiNisio, Samuelson and Bellamy appear only as named Defendants and do not appear anywhere in the body of the Complaint they are entitled to summary judgment. Defendants are correct that Plaintiff's Complaint does not provide much detail, though the body of the Complaint does refer to them by title at times, if not by name. However, in his response to the summary judgment motion (Doc. No. # 9, # 11]) Plaintiff explained what each defendant did. To the extent the Complaint failed to mention the involvement of these four defendants, we now know the role each played. Defense counsel, in his reply Declaration [# 11], again provides only a conclusory statement that the Complaint should be dismissed because Plaintiff failed to allege the defendants' personal involvement.

The Court finds that Defendants have failed to explain why, as a matter of law, their alleged actions do not amount to personal involvement. *See Taylor v. Habrour Pointe Homeowners Association*, 690 F.3d 44, 48 (2d Cir. 2012) ("The appellant's brief was so deficient as to amount to an invitation to the court to scour the record, research any legal theory that comes to mind, and serve generally as an advocate for appellant.") (citation omitted). Accordingly, since Ciepiela, DiNisio, Samuelson, and Bellamy have not demonstrated that they are entitled to judgment as a matter of law due to lack of personal involvement, that aspect of Defendants' Summary Judgment motion is denied.

10

**Failure to Exhaust Administrative Remedies**

Defendants also argue that Plaintiff failed to exhaust his administrative remedies. Defendants acknowledge Plaintiff filed a grievance on August 4, 2010 and appealed its denial to the Superintendent, but assert that Plaintiff subsequently failed to appeal the Superintendent's denial to CORC. Although Defendants were initially not aware of it when they filed their motion, they now concede that Plaintiff filed a second grievance on August 15, 2011, which *was* fully exhausted.

42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally, in order to satisfy 42 U.S.C. § 1997e(a), a plaintiff must file a grievance with respect to the challenged behavior, using DOCCS's Inmate Grievance Program procedures. Assuming that the grievance is denied, he must then exhaust the grievance appeal process, by appealing to the facility Superintendent, and then to CORC.

Defendants initially proceeded as if Plaintiff had only filed one grievance on August 4, 2010, which was unexhausted. Now that it is clear that Plaintiff did exhaust the second grievance, it is unclear from Defendants papers [# 10, ¶ 7] whether they intend to completely withdraw the argument concerning exhaustion. To the extent that Defendants are not withdrawing that argument entirely, and are alleging the scope of the claims in this law suit exceed the scope of the second grievance, the Court disagrees. Defendants cite *Tolliver v. New York State Dept. of Correctional Services*, 2009 WL 618371 at *5 (S.D.N.Y. March 12, 2009) for the proposition that a plaintiff fails

11

to exhaust if the suit exceeds the scope of the grievance. However, the Court finds the statements made by Plaintiff in the second grievance were sufficient to put prison officials on notice of the claims Plaintiff asserts in his Complaint. *See Jones v. Bock*, 549 U.S. 199 (2007) (Indicating that the primary purpose of a grievance is to alert prison officials to a problem). Defendants have not shown that the grievance failed to comply with New York's regulations governing inmate grievances. *See Espinal v. Goord*, 558 F.3d 119, 124-27 (2d Cir. 2009) (Indicating that the sufficiency of grievances is determined by state law). Defendants' motion on the grounds of failure to exhaust is therefore denied because they have not shown they are entitled to summary judgment as a matter of law.

**Deliberate Medical Indifference**

Plaintiff alleges that Defendants violated his Eighth Amendment rights in connection with his medical treatment, and the legal standard for such claims is clear:

> In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs. This standard incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind.
>
> Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation. [T]he Supreme Court [has] explained that the Eighth Amendment's prohibition on cruel and unusual punishments encompasses the deliberate failure to treat a prisoner's serious illness or injury resulting in the infliction of unnecessary pain and suffering.  Because society does not expect that prisoners will have unqualified access to health care, a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care. Similarly, a prisoner must demonstrate more than an inadvertent failure to provide adequate

medical care by prison officials to successfully establish Eighth Amendment liability. An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety, a state of mind equivalent to the familiar standard of 'recklessness' as used in criminal law.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir.2003) (citations and internal quotations omitted). Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation. See, *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."). Similarly, negligence constituting medical malpractice, without more, will not establish a constitutional claim. *Id.* (citation omitted).

Tan, Jin,[10] and Ciepiela have moved for summary judgment on the merits of Plaintiff's deliberate medical indifference claim. Defendants' cursory argument consists of the following statements:

Plaintiff's claim that the doctors did not diagnose him with glass in his foot is, at best, an allegation of negligence. Plaintiff makes no allegation as to any Defendant's state of mind, and makes no allegation that his condition may result in either degeneration - other than the conclusory allegation "the glass is still in my foot, an[d] getting wors[e]" - or extreme pain. (Complaint p. 6)

[# 6-1]. Defendants therefore seem to contend that Plaintiff's condition is not objectively serious, and that they did not act with deliberate indifference.

In response to the motion, Plaintiff reiterates and amplifies his contention that Tan, Jin, and Ciepiela knew he had glass in his foot and did not do anything to remove it. Specifically, Plaintiff submits that he met with Tan, who reviewed his record, falsely

---

[10] Again, Jin is substituted for Koenigsmann in the Complaint. The Court is aware that Jin has not been served with a summons and complaint.

told him there was no glass in his foot, and canceled his trip to the Podiatrist. Tan

maintains in his Affidavit [10][11] that he never examined or treated Plaintiff. However,

there appears to be triable issues of fact as to Tan's liability. Plaintiff also alleges that

Jin was aware of the glass in his foot and the pain it caused him, but waited over a year

before scheduling him to see the podiatrist. Plaintiff further contends that Ciepiela

refused to remove the glass from his foot, even though he was referred to Ciepiela

specifically for such surgery. Ciepiela, in his Affidavit [# 10], maintains that after

reviewing a consult sheet and x-ray of Plaintiff's foot, he found no glass in Plaintiff's foot

and determined surgery was not necessary. However, this appears to contradict the

statements Ciepiela made in his medical report following his examination of Plaintiff, in

which he stated that there was a foreign body in Plaintiff's foot, but that it was

asymptomatic. Plaintiff, of course, denies that the glass fragment was or is

asymptomatic. Further as to that point, to the extent that Defendants are maintaining

that Plaintiff's condition was not sufficiently serious, the Court finds that they have not

supported that contention with legal authority.

The Court finds Plaintiff has sufficiently alleged Tan, Jin, and Ciepiela knew of

and disregarded his condition. Particularly, at this early stage of the litigation, where no

discovery has been conducted, the Court finds that there are enough inconsistencies

---

[11] Defendants submitted Affidavits from the doctors only after it was clear the failure to exhaust argument was not viable. The Court would normally not consider these statements because a moving party cannot submit new arguments in a reply brief. *See Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010) ("It is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden"). However, the Court will consider them since Plaintiff had the opportunity to address them in his sur-reply [# 11].

between the Parties' versions of events to raise a triable issue of fact precluding summary judgment.

**CONCLUSION**

Defendants' Motion for Summary Judgment [#6] is denied. This ruling is without prejudice to Defendants bringing another summary judgment motion following the completion of discovery. Dr. Koenigsmann is terminated as a party to this action, and Ken Jin, M.D. is substituted in his place. The Clerk of the Court is directed to cause the United States Marshal to serve copies of the Summons, Complaint and this Decision and Order upon Jin without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor. Pursuant to 42 U.S.C. § 1997e(g)(2), the defendants are directed to answer the Complaint.

         SO ORDERED.

Dated:    September 9, 2013
          Rochester, New York

                              ENTER:


                              /s/ Charles J. Siragusa
                                CHARLES J. SIRAGUSA
                              United States District Judge